**HOWARD LOSEY, et al., v. STATE OF FLORIDA ex rel. VINCENT C. GIBLIN.**

28 So. (2nd) 604                                          June Term, 1946
January 3, 1947                                               En Banc

*Redfearn & Ferrell* and *Whitaker Brothers* for appellants.

*Glenn C. Mincer,* State Attorney, *Robert R. Taylor,* County Solicitor, and *S. O. Carson,* Assistant State Attorney, for appellee.

THOMAS, J.:

Early in this year the appellee filed a bill in chancery charging that property owned by two of appellants was being used by the others as a gambling house and importuning the court to halt further operation of the enterprise because it was a nuisance. Immediately afterward the relator served notice he would apply for an injunctive order, but evidently before the application was entertained he filed a motion to dismiss. The court denied the motion and simultaneously discharged the relator and substituted for him the State Attorney of the Eleventh Juricial Circuit and the County Solicitor of Dade County, instructing them to "proceed with the cause."

A more extensive chronicle of the steps to this point and a more detailed description of the pleadings may be found by examining our opinion in State ex rel. Giblin v. Sullivan, 26 So. (2nd) 509, not yet reported in Florida Reports. In that case the court discussed and determined the validity of a judgment for contempt entered against the relator, Giblin, because of the contents of his own affidavit appended to the motion to dismiss.

We are presently concerned with that part of the order denying dismissal where the court, *sua sponte,* dismissed the relator, but not the cause, and directed the matter to continue in the names of the prosecuting officers. As a preface, the chancellor found "it abundantly clear that the said relator [had] come into a court of equity with unclean hands, and [that] his bill of complaint, and his attempt to dismiss the same, [constituted] a base and utterly reprehensible attempt to use [the] Court for a most unconscionable purpose. To permit the Courts of this State," he continued, "to be so used

would constitute an infinitely greater danger to the public welfare than the existence of a public nuisance."

The appellants then sought dismissal of the bill on the grounds that if its filing was but an attempt to exploit the court and if the hands of the relator were unclean, the subject matter ostensibly presented for adjudication could not be freed of the taint by the simple process of changing relators. This motion was denied; whereupon the appellants answered, and the court heard testimony on the question of the issuance of the injunction, eventually entering a permanent restraining order.

The first point to be decided is the propriety of the order substituting the prosecuting officers for the original relator and directing the successors to continue the proceedings. To determine it we must consult two statutes, Sections 64.11 and 64.13, Fla. Statutes, 1941, and F.S.A. The first of these provides that a suit of this kind may be maintained by the State Attorney, the County Solicitor, or a citizen; the second, that a bill once filed by a citizen may not be "dismissed except upon a sworn statement made by said citizen and submitted to the court and unless the court shall be satisfied that said cause shall be dismissed, the said bill shall not be dismissed but shall continue and the state attorney or county solicitor notified to proceed with said cause." Applied to the facts here presented, the bill lodged by Giblin could not have been dismissed without his submission to the court of a sworn statement, presumably giving valid reason for the action. Upon his doing this, dismissal would not have followed unless the court was satisfied from the representation that discontinuance was proper. If the court decided that it was not, then it was his duty to instruct the prosecutors to proceed with the cause.

The difficulty we encounter in approving what was done springs from the attitude of the judge toward the litigation as expressed by him in his order. He found that the relator's hands were unclean, which is but another way of saying that the suit was an attempt to use the court for selfish, ulterior purposes. He was at pains to point out how the remedy could be abused by employing it, for instance, "as a weapon of

internecine warfare between rival gangs of gamblers; as a means by which the gamblers attacked might exert strong indirect pressure upon law enforcement officers to induce them to relax their vigilance as to some other gambling establishment in which the relator has a financial interest; or to accomplish various other sinister purposes exactly opposite to a bona fide desire to abate a public nuisance for the public welfare"—and so on.

Now, it is true that the chancellor was dealing with the matter objectively when he used the language we have just quoted, but a review of the entire record, including the order, leads inescapably to the view that he thought the original relator's motives were of the character and quality of those denounced by him. If they were, what better reason could have existed to dismiss the suit? Obviously a citizen may not bring such a suit under the statute and then dismiss it whimsically or capriciously without cause; by the same statute the court is empowered to direct a continuance only if there is no sound reason to dismiss. So if we assume that this suit was brought to suppress one "gang of gamblers" that a rival group might prosper, or if employed as a "weapon of internecine warfare between rival gangs of gamblers," was its insidious purpose thwarted simply because an injunction was ultimately secured by the successor-relators instead of the original one? We believe not. If the bill prayed for relief calculated to benefit one band of gamblers to the detriment of their competitors, the pleading was inherently bad, and the vice could not be cured by a substitution of relators. The relevancy of the doctrine of unclean hands is not gauged by the personal character of a relator, but by his conduct with reference to the subject matter, the transaction, under scrutiny. Miller v. Berry, 78 Fla. 98, 82 So. 764.

Accepting the chancellor's appraisal as correct, it is immediately patent that the suit should not have been brought and, having been brought, should therefore have been dismissed when he found it to be tainted by improper motive. After all, from a practical standpoint, no obstacle would thus have been cast in the path of Dade County's and the Eleventh Circuit's prosecutors. Either of them could have then insti-

tuted suit, if he considered it advisable, or could have exercised his prerogative of refraining from doing so if convinced that such action on his part would result in eliminating one gaming place to the advantage of a competitor. It seems incongruous for the prosecuting officers to be required to urge the issuance of a permanent injunction based on a bill which the very chancellor trying the case had condemned.

We find it necessary to consider only one other question—namely, the one challenging exclusion by the chancellor of certain testimony proferred by appellants. The court had permitted the introduction, over objection, of evidence about the reputation of the place as a gambling "joint," but when appellants sought to establish by the mayor of the municipality (El Portal) and thirty-five other residents of the community from various walks of life that they had never heard of gambling being carried on there, the proffer was denied. No reason for the ruling appears in the record, and none could be given when counsel presenting the case orally before this court was questioned about it during the argument. We think this ruling was plainly erroneous.

For the reasons given, the decree is reversed and the cause remanded, with instructions to dismiss the bill of complaint.

Reversed.

TERRELL, BUFORD and ADAMS, JJ., concur.

CHAPMAN, C. J., dissents.

CHAPMAN, C. J., dissenting:

This appeal challenges three orders entered by the Circuit Court of Dade County viz: (1) an order dated March 8, 1946, substituting as relators F. M. Williams, Glenn C. Mincer, as State Attorney, and Robert R. Taylor, as County Solicitor for the State of Florida, in lieu of Vincent C. Giblin; (2) an order dated March 12, 1946, overruling a motion to dismiss the suit made subsequent to the substitution order; (3) a permanent injunction against operating "any dice, card, roulette or other game of chance, device or implements of chance wherein or whereat persons play for money or other things of value" at certain described property in Dade County, Florida.

I cannot close my eyes to the uncontradicted testimony of Frank M. Williams and Sidney Ross, visitors about the premises, that they saw and observed gambling, money being passed and customers using and operating the devices and gambling implements. Each qualified under the rule and testified that the place had a reputation as gambling house. Officers Quattlebaum and Linton visited the place and each observed a roulette table, roulette wheel, black jack table, dice table, two lookout stands and four chain stands and chains. Each of these officers testified that the place had a reputation as a gambling house. Beverage License No. 334, on September 25, 1945, issued to Howard Losey and was by him transferred or assigned to William D. Bartlett. Likewise a license to operate a restaurant issued October 1, 1945, to W. D. Bartlett. Club 86, by W. D. Bartlett, partner, applied for License No. 6605 for "Dance floor or entertainment." A partnership certificate was filed with the Little River Bank and Trust Company disclosing that Club 86 was a partnership composed of W. D. Bartlett, Dave Byer, C. F. Thomas and M. A. Yarbrough. See State Exhibit No. 7. Neither member of the partnership took the witness stand to testify in behalf of Club 86 in the Court below.

Howard Losey testified that he and his wife, Esther M. Losey, owned the premises known as Club 86 situated at 8600 Biscayne Boulevard in El Portal, and on June 10, 1945, leased it to W. D. Bartlett for a period of fifteen months. He explained the issuance of the liquor license in his name at the place and its transfer to W. D. Bartlett. The Chancellor below in construing the evidence offered by the State of Florida (there was none whatsoever offered by the partnership owning and operating Club 86), was forced to conclude that gambling was being operated as Club 86 contrary to law, and ordered the issuance of a permanent injunction as a matter of course. I fail to find error in this ruling.

The Chancellor sustained objections to certain questions propounded to Dr. James J. McCormick, Mayor of El Portal, who was the only witness interrogated for the defendants, viz:

"1. Q. Now, Doctor, the premises there and the business

operated and known as Club 86, I want you to tell the court whether or not that business injuriously affects in any way the health and morals and finer sensibilities of the people of the community?

"Mr. Railey: We object, it is not an issue in this case. The issue is whether or not it is a gambling establishment.

"The Court: The objection is sustained.

"2.   Q. I want to ask you, Doctor, whether or not that business operated and known as Club 86 in the municipality of El Portal is injurious in any respect by reason of the manner of its conduct, by reason of its operation, in any respect injuriously affects the welfare of the people in the immediate community where it is located?

"Mr. Railey: We make the same objection, and the further objection, it will be simply the expression of a private, individual operation.

"The Court: Sustained.

"3.   Q. I want to ask one more question and then I will make a proffer.  I want you to tell the court, Doctor, whether you people of El Portal consider this business operated on those premises as an asset to your community?

"Mr. Railey:  We make the same objection and the further objection that he is in no position to speak for the people of El Portal.  It would be an individual opinion.

"The Court: Sustained."

"Mr. Pat Whitaker:  The defendants, in view of the court's ruling in sustaining the objections, now proffers to prove by this witness, the mayor of El Portal, the municipality in which the business and premises is located, which is the subject matter here under investigation, we now proffer to prove by this witness as well as a majority of the members of the city council of El Portal, a large number of Business leaders in that immediate vicinity and community, the witnesses being in addition to the witnesses now upon the stand (witnesses named.)   We proffer to prove by each of these witnesses, as well as the witness now in the witness chair, that each of them live and reside in the municipality of El Portal; that they also reside in the immediate vicinity of the premises

where this business involved here, known as the Club 86 is conducted and operated; that said club in the conduct and operation of its business does not annoy or disturb in any way the people in the immediate vicinity or otherwise; that the morals, health and finer sensibilities of the people of the community are not injuriously affected in any way by the conduct and operation of the business being carried on in said club; that they had never heard that gambling was being carried on in said premises, or heard anything thereof except as published in the newspapers of the city of Miami, a different and distinct municipality; that said business so conducted on said premises is conducted in such a manner and such a way that the people of the municipality of El Portal feel that it is an asset to said community and not detrimental to the welfare or the morals, health, comfort, or finer sensibilities of the people of said community in any way."

It will be observed that Section 823.05, F.S.A. defines a nuisance as "any house or place of prostitution, assignation, lewdness or place or building where games of chance are engaged in in violation of law or any place where any law of the State of Florida is violated, shall be deemed guilty of maintaining a nuisance." See Section 856.02, F.S.A. The Chancellor was correct in his ruling sustaining objections to the proffered testimony as made by counsel for Club 86, because the issues defined by the pleadings were limited exclusively to gambling and not that the operation of Club 86 annoyed or disturbed in any way the people in the immediate vicinity or elsewhere; or that it affected the morals, health and finer sensibilities of the people of the community; or concerned testimony of witnesses that they never heard that gambling was being carried on in said premises . . . or that the operation of the gambling house was detrimental to the welfare, morals, health, comfort or finer sensibilities of the people of the community in any way. Section 64.13, Fla. Stats. 1941 (F.S.A.), provides that in actions like the cause at bar "evidence of the general reputation of the alleged nuisance and place shall be admissible for the purpose of providing the existence of said nuisance." Counsel failed in the proffer to submit testimony admissible under the rules of evidence, as will be shown by a

study and analysis of the proffered evidence. The permanent injunction simply restrained the defendants from operating, conducting or maintaining (on the premises) any dice, cards, roulette or other game of chance, device or implement of chance wherein or whereat persons play for money or other things of value."

It is next contended that the order dismissing Giblin as relator and substituting therefor as relators F. M. Williams, the State Attorney, and the County Solicitor, of Dade County, constitutes reversible error and the motion to dismiss should have been sustained. The answer to this contention is in the language of Section 64.13, *supra*, viz., "No bill of complaint when filed by any citizen shall be dismissed except upon a sworn statement made by said citizen and submitted to the court and unless the court shall be satisfied that said cause shall be dismissed, the said bill shall not be dismissed but shall continue and the state attorney or county solicitor notified to proceed with said cause." This statute confers on the Chancellor the duty to hear the cause of the relator Giblin and to dismiss or refuse to dismiss the bill. He exercised his discretion under the statute and an abuse thereof does not appear on this record. "When authority to bring the suit is properly conferred upon a private citizen, the suit is in effect one instituted in behalf of the public, and in which the public is the *real complainant,* to the same extent as though the suit was brought by the Attorney General or public prosecutor." Pompano Horse Club, Inc. v. State of Florida, 93 Fla. 415, (text 427), 111 So. 801.

The evidence in the record, beyond any controversy, establishes the fact that Club 86, a partnership composed of William D. Bartlett, M. A. Yarborough, C. F. Thomas and Dave Byer, located at 8600 Biscayne Boulevard, El Portal Village, Dade County, Florida, operated a gambling house; that neither of them took the witness stand or otherwise denied the gambling charges, and that the permanent restraining order entered against the partnership on the merits of this controversy, in my opinion, is free from error and should be affirmed. I fail to find evidence in record to the effect that Howard Losey and Esther M. Losey, owners of the premises,

had knowledge that the partnership was operating a gambling house on their premises and as to them the decree should be reversed.