108 So.2d 790 (1959)
Tom BROOKER, for himself and on behalf of all other taxpayers in the City of Naples, Florida, similarly situated, Appellant,
v.
W. Roy SMITH, individually, and as Mayor of the City of Naples, Florida, a municipal corporation, Appellee.
No. 772.
District Court of Appeal of Florida. Second District.
February 4, 1959.
*791 John W. Wright, Daniel Neal Heller, Herbert M. Klein, Miami, for appellant.
Sheppard & Woolslair, Fort Myers, for appellee.
ALLEN, Judge.
This is an interlocutory appeal from two orders in a suit for an accounting and other equitable relief. Such orders deal with a number of motions made by the parties, but only portions thereof, as hereinafter shown, are pertinent to this interlocutory appeal. Plaintiff appeals.
Tom Brooker, as a taxpayer in the City of Naples, brought suit against W. Roy Smith, individually and as Mayor of the City of Naples, to require defendant to account for certain sums of money allegedly received by defendant, while mayor, contrary to law.
Basically, plaintiff's complaint alleged that the City of Naples, contrary to its charter and the statutes of Florida, dealt with business firms in which defendant had an interest, and that defendant, contrary to said charter, received certain perquisites. Defendant's amended answer denied the illegality alleged, set out the various sums received by him while in office, and set out his relationship with the various business firms involved.
Plaintiff moved for a summary decree on the issue of liability, and defendant filed an affidavit in opposition to such motion. In his affidavit, defendant denies all impropriety except that he admits certain group insurance premiums were improperly paid by the city for his benefit and that he received one monthly paycheck, in the amount of thirty five dollars, too much. Plaintiff's motion was denied by the chancellor's order dated May 19, 1958.
Defendant filed a petition alleging that plaintiff came into the involved suit with unclean hands, the basis for such allegation being that plaintiff filed said suit solely for the purpose of defeating defendant in his attempt to obtain re-election as mayor in an election held February 4, 1958, this suit having been filed January 22, 1958. The petition then requested that such issue be determined in a separate trial prior to final hearing or trial of the main suit. Plaintiff moved to strike and to quash defendant's petition as not being proper under the Rules of Civil Procedure. The chancellor, in said May 19, 1958, order, granted defendant's petition and denied plaintiff's motion to strike and to quash.
Finally, plaintiff moved to have defendant cited for contempt and for other related relief because of alleged failure of defendant to respond adequately to a subpoena duces tecum. The chancellor, in an order entered July 1, 1958, deferred ruling on the motion and held as follows:
"3. That the Court holds that Rule 1.28 and Rule 1.34 of the 1954 Rules of Civil Procedure are in pari materia and the production of documents for *792 discovery by subpoena duces tecum under Rule 1.34 of a party, as distinguished from a witness not a party, may not be compelled without the showing of good cause required by Rule 1.28."
Plaintiff's first point on appeal, in effect, questions the propriety of that portion of the chancellor's order of May 19, 1958, which denied plaintiff's motion for summary decree as to defendant's liability.
Before going to the merits of plaintiff's first point, we are impelled to recognize a question of procedure raised by defendant. Though we cannot agree with defendant that the defect hereinafter discussed warrants affirmance without consideration of the merit of plaintiff's first point, we do feel that such defect requires some comment. Without quoting the point in question, we would explain that plaintiff has fallen into the error so frequently committed by attorneys filing briefs before this court, that is, formulation of the point to be argued by the statement of factual or legal premises which can obviously form a basis for only one legal conclusion, the one sought by appellant. Seldom it is that such an approach is proper, for in the great majority of appeals, if not in all, the very question to be determined is the existence or effect of one or more of the premises assumed by the appellant.
Turning now to the merits of plaintiff's first point, we shall first quote the pertinent sections of the charter of the City of Naples, Sections 10 and 11, Chapter 26044, Sp.Laws 1949:
"Section 10. The affairs of the City shall be administered by a Council composed of four Councilmen and a Mayor, Manager, Clerk, Chief of Police, Tax Assessor, Tax Collector, and Treasurer, and such other officers as the Council may from time to time deem necessary.
"The Mayor shall be elected from the qualified electors of said City for a period of two years or until his successor is duly elected and qualified. He shall be paid $35.00 per month and shall not be entitled to any perquisites. The present Mayor shall continue in office until the next general election and the expiration of his present term.
"The Council members shall be elected from the qualified electors of said Town for a term of four years. The present members of the Council shall continue in office until the expiration of their respective terms. Councilmen shall be paid $7.50 per month salary.
"The Manager, Clerk, Tax Assessor, Tax Collector and Treasurer, shall be appointed annually by the Council at the first meeting held after the first Tuesday in February of each year. Either one or more of said offices may be combined. All officers shall hold office at the pleasure of the Council, except as otherwise herein provided. Where any of such officers are under contract annual appointment will not be required.
"Section 11. The Mayor and members of the City Council shall possess the general qualifications of a City elector, and shall possess such other qualifications as the Council shall from time to time prescribe by ordinance. (Neither the Mayor nor any member of the Council shall be personally interested, directly or indirectly, in any contract with the City, or in the sale to the City of any land, material supplies, or services.) This provision shall not prevent or preclude the City from making loans or any financial arrangements arrangements [*]sic with any incorporated bank notwithstanding the membership of any of its officers as stockholders or officers in such bank."
As above mentioned, defendant admitted in his answer that he had received a perquisite prohibited by the applicable *793 charter provision, first above quoted, in the form of certain group insurance premiums and that he received one monthly pay check too many during his tenure as Mayor of the City of Naples. The effect of these admissions is that defendant concedes liability as to these sums, and the chancellor erred in failing to grant plaintiff's motion for summary decree as to liability for such sums. This error is quite understandable in view of the position taken by the able trial judge herein as to the question raised by plaintiff's Point II, discussed below.
Defendant's answer also admitted that he sold certain logs or pilings to the City of Naples while acting as Mayor. The explanation of this sale is quite satisfactory in the moral sense, that is, that the city needed the pilings, defendant had them and didn't need them, and defendant was willing to sell them for his cost, a very reasonable figure. Morality notwithstanding, it is apparent that the admitted safe was in direct violation of the applicable charter provision, second above quoted, in that "the Mayor (was) personally interested, directly * * * in the sale to the City of * * * material, supplies or services." The chancellor also erred in failing to grant plaintiff's motion for summary decree as to liability with regard to such sale of pilings. Watson v. City of New Smyrna Beach, Fla. 1956, 85 So.2d 548.
The complaint herein alleged a number of other business transactions which have occurred during defendant's several terms in office and which, plaintiff vigorously argues, are clearly improper under the above quoted charter provisions, applicable statutes and public policy. Likewise, the complaint sets out certain expenses, in the way of costs for entertainment of visiting dignitaries, official trips and automobile maintenance, for which the city reimbursed defendant and of which plaintiff complains as being improper as a matter of law. As to these other alleged improprieties, defendant made specific denials of any illegality and alleged facts which tend to support his denial.
With regard to the issues raised by such allegations and denial thereof, we affirm the chancellor's refusal to grant plaintiff's motion for summary decree. The determination of those issues in some instances involve material disputed issues of fact and in others require clarification of the surrounding circumstances which is prevented by the condition of the record now before this court, this being an interlocutory appeal, not an appeal on the original record. However, we stress the fact that such affirmance should in no way be construed as holding that the improprieties charged are baseless or that defendant's explanation thereof completely removes said business transactions and expenses from the rather unfavorable light cast by plaintiff's complaint. We simply hold that these are matters to be determined by the chancellor upon the merits at the final hearing.
The courts of this State have always jealously guarded the public interests when scrutinizing the propriety of any action by a public official which smacks of self interest combined with, or opposed to official duty. It might well be that such an attitude may, in circumstances similar to those here presented, be fairly questioned by a city officer who has been paid a nominal salary for the invaluable, public spirited service rendered to his community over a period of many years. Nonetheless, every failure by a public official to obey the clear mandate of the charter or the statute requires that official to suffer the restraining hand of the courts in order that no unfortunate precedent be set for future, less charitable office-holders.
Plaintiff's Point II reads as follows:
"Whether the people's right to return of public funds wrong-fully converted *794 by a city official may be defeated by the private defense of unclean hands?"
The "clean hands" maxim is a cornerstone of equity jurisprudence, since equity is a "court of conscience." The maxim finds a counterpart in the criminal law in the defense of entrapment; "it demands fair dealing in all who seek relief, and requires decency, good faith, fairness and justice." 12 Fla.Jur., Equity, § 54.
There is at least one, generally recognized exception to the "clean hands" maxim; that is, the motives of the plaintiff in bringing a taxpayer's suit are immaterial. 18 McQuillan, Municipal Corporations, § 52.11 (3d Ed. 1950). This rule is not without limitations, but we conclude that such limitations have no application in the present suit. Also, the rule has been recognized by the Florida Supreme Court, though not in taxpayer's suits as such. See Valdez v. State ex rel. Farrior, 1940, 142 Fla. 123, 194 So. 388; Losey v. State ex rel. Giblin, 1947, 158 Fla. 381, 28 So.2d 604.
In the present case, defendant raised the "clean hands" maxim as a defense. The basis of such defense is that plaintiff's real reason for instituting this suit was to bring about defendant's defeat in a forthcoming, now past, election. Defendant's opponent was a third person not a party to this suit. The suit was filed January 22, 1958, and the election was held February 4, 1958, with defendant winning another term as mayor of the City of Naples.
We conclude that the "unclean hands" maxim has no application in the present suit and that the chancellor erred in permitting defendant to plead the maxim as a defense herein. We shall not on the one hand recognize the above mentioned improprieties committed by defendant, and on the other hand tell plaintiff he may not, as a taxpayer, seek to recover the public funds involved because he also sought to defeat defendant at the polls. We do not see that the fact that such defeat was uppermost in plaintiff's mind at the time he filed this suit, which has now been pending nearly a year and has been appealed to this court twice, materially affects his right, as a taxpayer, to initiate and maintain the suit.
The final question raised by plaintiff attacks that portion of the chancellor's July 1, 1958, order which, as above quoted, held Rules 1.28 and 1.34, F.R.C.P. 1954, 30 F.S.A., in pari materia and as a consequence, that a party must make the showing of good cause required by Rule 1.28 before another party will be required to produce documents under the subpoena duces tecum provided for in Rule 1.34, or more specifically, Rule 1.34(d).
Rule 1.28, F.R.C.P. 1954, reads as follows:
"Rule 1.28. Discovery And Production Of Documents And Things For Inspection, Copying Or Photographing.
"Upon motion of any party showing good cause therefor and upon notice to all other parties, and subject to the provisions of Rule 1.24(b), the court in which an action is pending, may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 1.21(b) and which are in his possession, custody, or control; or (2) order any party to permit entry upon designated land or other property in his possession or control for the purpose of inspecting, measuring, surveying, or photographing *795 the property or any designated object or operation thereon within the scope of the examinations permitted by Rule 1.21(b). The order shall specify the time, place, and manner of making the inspection and taking the copies and photographs and may prescribe such terms and conditions as are just."
Rule 1.34(d) reads as follows:
"(d) Subpoena for Taking Depositions; Place of Examination.
"(1) Proof of service of a notice to take a deposition as provided in Rules 1.24(a) and 1.25(a) constitutes a sufficient authorization for the issuance by the clerk of the court in which the deposition is to be taken of subpoenas for the persons named or described therein. The subpoena may command the person to whom it is directed to produce designated books, papers, documents, or tangible things which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 1.21(b), but in that event the subpoena will be subject to the provisions of Rule 1.24(b) and subdivision (b) of this Rule."
Rule 1.28 is identical with Common Law Rule 27 which, in turn, was derived from Federal Rule of Civil Procedure 34, 28 U.S.C.A. Rule 1.34 first became a part of our rules of procedure in 1954 and was adapted from Federal Rule of Civil Procedure 45. Each of our said rules and the corresponding federal rule are essentially identical. Therefore, since the point in controversy here has not been ruled on by our Supreme Court, we may look to decisions by the various federal courts for assistance.
There seems to be no question but that the chancellor was correct in holding that our Rules 1.28 and 1.34 should be considered in pari materia. Many federal cases dealing with said Rules 34 and 45 have so held. Shepherd v. Castle, D.C.W.D.Mo. 1957, 20 F.R.D. 184; Sagorsky v. Malyon, D.C.S.D.N.Y. 1952, 12 F.R.D. 486; North v. Lehigh Valley Transit Co., D.C.E.D.Pa. 1950, 10 F.R.D. 38.
In North v. Lehigh Valley Transit Co., supra, plaintiff sought to require defendant's claim agent, who had appeared for the taking of an oral deposition by virtue of a subpoena duces tecum, to produce certain witnesses' written statements described in the subpoena. The agent brought such statements with him, but upon demand of plaintiff to produce them, he refused to do so. On motion of plaintiff to require such production, the court said:
"It is conceded that the plaintiff has not made a showing of good cause, as required by Rule 34, Federal Rules of Civil Procedure, 28 U.S.C.A., for the production of these documents. The question is whether, without such showing, he can obtain their production in advance of trial by a subpoena duces tecum directed to a witness having custody of them.
"The discovery procedure created by the Federal Rules was intended to be a complete, integrated system and should be administered as such. One distinct branch of it has to do with the production of original documents for inspection before trial. This field is covered by Rule 34 and by Rule 45 when used in connection with Rule 26. These rules are directed to the same end, are in pari materia, and must be so construed.
"The normal method of obtaining inspection of a document is under Rule 34. Rules 26 and 45 afford a practical, and under proper conditions permissible, shortcut. This, however, is merely another, and often more convenient, method of accomplishing the same end and, regardless of the fact that those two rules do not contain the express limitation of Rule 34, they are, I think, necessarily subject to it. I cannot believe that the Supreme Court, having *796 required good cause for production under Rule 34, intended that a party could become entitled, as a matter of right, to the production of the original of a document, without any showing of the propriety or necessity of such production, merely by adopting an alternative method. If a showing of good cause was considered a proper and reasonable limitation upon the right to a preview of the opposing party's papers and documents, it must have been intended to obtain, whatever process may be resorted to." [10 F.R.D. 38.]
The cause is remanded for further proceedings consistent with the views herein expressed.
Affirmed in part, reversed in part and remanded for further proceedings.
KANNER, C.J., and SHANNON, J., concur.